

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN
~~WILL WILSON~~
**ATTORNEY GENERAL**

April 25, 1939

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Opinion No. 0-162

Dear Sir:

Re: Is the sum of $10,471.95,
representing gross receipts
taxes accruing against a gas
utility under Art. 6060,VACS,
during the State's fiscal
year ending Aug. 31, 1938, and
paid under protest during such
year under Art. 7057b, VACS,
but not transferred or placed
in Gas Utilities Fund until
the termination of protest
suit during the fiscal year
ending Aug. 31, 1939, subject
to warrants drawn against such
fund, under appropriations
for the Attorney General's
Department and Railroad Com-
mission for the fiscal year
ending August 31, 1939.

We have for answer your inquiry of April 18, 1939, con-
cerning your authority to issue warrants against certain moneys
in the Gas Utilities Fund, created by Article 6060, as amended,
Vernon's Annotated Civil Statutes, under appropriations for the
Attorney General's Department and the Railroad Commission for the
fiscal year ending August 31, 1939, when it appears that such
moneys came into the Gas Utilities Fund under the following cir-
cumstances:

During the fiscal year 1937-1938, ending August 31, 1938,
the sum of $10,471.95 was paid under protest according to the
terms and provisions of Article 7057b, Vernon's Annotated Civil
Statutes, by the Lone Star Gas Company, a "Gas Utility" as defined
by Article 6050, Subdivision 2, Vernon's Civil Statutes. This
payment represented the gross receipts tax of one-fourth of one
percent of the gross income received by said company from all
business done within the State of Texas during such period. This
tax is levied by Article 6060, as amended, Vernon's Annotated Civil
Statutes, which provides that the proceeds of such tax shall go

to constitute the Gas Utilities Fund.  A suit was duly and time-
ly filed by such gas utility to recover the taxes so paid under
protext, under Article 7057b, Vernon's Annotated Civil Statutes,
but upon appeal to the Court of Civil Appeals for the Third
Supreme Judicial District from an adverse judgment of the trial
court, said cause was dismissed, and the taxes which had been
thereby protested became, under Article 7057b, Vernon's Anno-
tated Civil Statutes, subject to transfer into the fund in which
they would have gone originally except for such protest and
suit.  But the date when this transer into the Gas Utilities
Fund became possible was during the fiscal year ending August
31, 1939.

Article 6060, Revised Civil Statutes, 1925, as amended
by Acts, Regular Session, 42nd Legislature, Chapter 73, page 111,
levies a gross receipts tax of one-fourth of one per cent of the
gross income received by defined gas utilities, from all business
done within the State, and provides that such taxes shall be paid
into the State Treasury at Austin on a quarterly basis, in a fund
to be designated and known as the "Gas Utilities Fund."  It is
further provided that such Fund shall be used for enforcing the
provisions of Articles 6050 to 6066, inclusive, Vernon's Annotated
Civil Statutes, known as the "Gas Utilities Act."

Article 6066, as amended by Acts, Regular Session, 42nd
Legislature, Chapter 190, page 319, limits enforcement expendi-
tures out of such Gas Utilities Fund as follows:

"The salary and expenses of the expert and his
assistant and the salaries, wages, fees, and expenses
of every other person employed or appointed by the
Commission under the provisions of this subdivision,
and all other expenses, costs, and charges, including
witness fees and mileage incurred by or under authority
of the Commission or a Commissioner in administering
and enforcing the provisions of this subdivision or in
exercising any power or authority hereunder, shall be
paid out of the Gas Utilities Fund provided for by
Article 6060, as amended by H.B. No. 547, Acts of the
Regular Session of the 42nd Legislature, by the State
Treasurer on warrants of the Comptroller on orders
or vouchers approved by the Commission or Chairman
thereof.  The entire amount derived from the tax imposed
by Article 6060, as amended, shall be used for the
purposes of enforcing the provisions of the preceding
Articles 6050, et seq.  Any surplus remaining in this
fund after paying all such salaries and expenses as
may be contracted to be paid and incurred and such as
may be reasonably estimated by the Commission for
its use shall be paid over to the General Revenue Fund

on September First of each year, beginning September 1, 1932. Provided, that not more than Seventy Thousand ($70,000.00) Dollars shall ever be spent in any one Calendar year."

Chapter 504, p. 1362, General and Special Laws, Regular Session, 45th Legislature, being the departmental appropriation bill for the fiscal years ending August 31, 1938, and August 31, 1939, specifically appropriates out of the Gas Utilities Fund for each of such years, the sum of $18,250.00 to the Attorney General's Department for the enforcement of the Gas Utilities Act, (p. 1372), and the sum of $50,170.00 for salaries, expenses etc. of the Gas Utilities Division of the Railroad Commission, (p. 1474).

It is our opinion, and you are accordingly advised, that when proper vouchers are presented to you by the Attorney General's Department and the Railroad Commission under the foregoing departmental appropriation bill for the fiscal year ending August 31, 1939, you may lawfully issue warrants upon same, to be paid out of any moneys in the Gas Utilities Fund, created by Article 6060, as amended, Vernon's Annotated Civil Statutes, including said sum of $10,471.95, transferred or to be transferred to said fund during the current fiscal year ending August 31, 1939. Our conclusion is grounded upon the proposition that all moneys which, under governing statutes, come into the Gas Utilities Fund during any given fiscal year, may be used to pay warrants drawn against such Fund under appropriations for that particular fiscal year.

But by your inquiry you make the point that the $10,471.95 in question represented taxes due and payable to the State under Article 6060, Vernon's Annotated Civil Statutes, during the fiscal year ended August 31, 1938, and consequently such specific sum of money is not chargeable with salaries and expenses incident to the enforcement of the Gas Utilities Act during the fiscal year ending August 31, 1939, and that warrants cannot be drawn against such fund for such salaries and expenses.

This position would be tenable if the $10,471.95 involved in your inquiry had been actually paid into the Gas Utilities Fund during the fiscal year ended August 31, 1938, but such is not the case here. The effect of the payment of this particular $10,471.95 under the protest provided by Article 7057b, Vernon's Annotated Civil Statutes, was to place such fund or sum of money in a Suspense Account in the State Treasury rather than into the Gas Utilities Fund. As long as this particular sum of money occupied this status of suspense, it belonged neither to the State of Texas claiming such tax, nor to the aggrieved gas utility, claiming, by written protest, that it did not owe such tax. An elaborate system of bookkeeping by the State is set up by Section

3 of said Article 7057b, Vernon's Annotated Civil Statutes, for segregating such protested tax payments from either the General Fund or any of the Special Funds in the State Treasury.

Perforce of these statutory provisions this particular sum of $10,471.95 would not come into the Gas Utilities Fund during the year such taxes were claimed to be due and payable, i. e. 1938, and, in fact, would not be allocated to such Fund until such time as it was finally determined, at the end of the litigation provided and required by Article 7057b, Vernon's Annotated Civil Statutes, that such moneys properly belonged to the State of Texas as a part of its lawful revenues. If, on the other hand, the protesting taxpayer should prevail in a suit brought within 90 days, in the form and manner required by the Protest Statute, then such moneys or funds would never find their way into the Gas Utilities Fund but would be paid out of the Suspense Fund of the Treasury to such taxpayer, together with earned interest thereon. An appeal is contemplated by the Protest Statute to ultimately determine the status of and title to such protested tax payments, as between the State and the taxpayer, and this could conceivably result in such tax payments being kept in the Suspense Account of the Treasury and out of the Gas Utilities Fund for several years. Surely it was not the intent of the Legislature that the Gas Utilities Fund should be denied the advantage of gross receipts taxes levied by Article 6060, Vernon's Annotated Civil Statutes, merely because the protesting gas utility elects to put such fund into a state of suspense, pending a determination of its rights. If and when such tax payment is, by a court of competent jurisdiction, adjudged to be a part of the revenues of the State, there is nothing in the Protest Statute, or in any other statute which we have found, which would prevent such moneys being considered a part of the Gas Utilities Fund, subject to warrant drawn on that Fund, for necessary expenses incurred in the enforcement of the Gas Utilities Act during the same fiscal year in which such moneys were finally allocated to the Gas Utilities Fund. In fact, Section 4 of the Protest Statute provides that "if suit is not brought within the time and within the manner herein provided, or in the event it finally be determined in such suit that the sums of money so paid or any portion thereof, together with the pro rata interest earned thereon, belong to the State, then and in that event, it shall be the duty of the State Treasurer to transfer such money from the suspense account to the proper fund of the State by placing the portion thereof belonging to the State in such fund by the issuance of a deposit warrant." (Emphasis ours)

Under the foregoing, it became the plain statutory duty of the State Treasurer, when the gas utility in question abandoned its appeal in the Court of Civil Appeals, from a judgment in favor of the State in the District Court of Travis County, to forthwith transfer the sum of $10,471.95 out of the Suspense Account into

the Gas Utilities Fund, where it would become subject to warrants drawn by you under appropriations for the year during which such sum of money came into said Gas Utilities Fund.

It would follow as a corollary from this conclusion that you would have no lawful authority to issue warrants against any sum or sums of money placed in the Suspense Account of the Treasury by a protest payment of taxes under Article 7057b, Vernon's Annotated Civil Statutes, because such moneys are not in the Gas Utilities Fund or any other Fund subject to warrant, until the time of their transfer from this Suspense Account, in accordance with the terms of Section 4, Article 7057b, Vernon's Annotated Civil Statutes, hereinabove quoted. Consequently, the opinion **directed to you under date of June 8, 1938, by a former Attorney General, holding to the contrary, is, of necessity, overruled.**

Yours very truly,

ATTORNEY GENERAL OF TEXAS


By s/Pat M. Neff, Jr.
Pat M. Neff, Jr.
Assistant

PMN:N:wc

APPROVED
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS